3 B.R. 139 (1980)
In the Matter of O.M.K. CORPORATION, d/b/a Plaza Nursing Center and K.M.O. Corporation, d/b/a Golf Mill Nursing Center, Debtors.
Bankruptcy Nos. 79 B 41339, 79 B 41340.
United States Bankruptcy Court, N.D. Illinois, E.D.
February 28, 1980.
Richard Golding, Chatz, Sugarman, Abrams, Haber & Fagel, Chicago, Ill., for debtors.
Jerome Torschen, Chicago, Ill., for Central National Bank.

*140 MEMORANDUM AND ORDER
ROBERT L. EISEN, Bankruptcy Judge.
Throughout the course of this litigation the debtor corporations have repeatedly alleged that the debtors were fraudulently induced into the execution of leases for Golf Mill Nursing Home and Plaza Nursing Center. Plaintiff lessors, Central National Bank, et al. have now moved this court to make a summary finding on the issue of fraud. In support of their motion, plaintiffs have produced a release, which is signed by the principals of the debtor corporations, and supporting documents. Pursuant to the terms of the release, the principals of the debtors have released all claims against the plaintiffs, including all claims of fraudulent inducement and/or misrepresentation, which could have arisen from the negotiation and execution of the subject leases and which were known at the time the release was executed.
In response to the plaintiffs' motion, the debtors challenge the validity of the release. More specifically, debtors contend that the release is unenforceable since:
1. The release is not signed by the debtors; 2. The plaintiffs fraudulently induced debtors' principals to execute the release; 3. The release fails for want of consideration.
1. Debtors maintain that the absence of corporate signatures on the release renders the release unenforceable with respect to the debtor corporations. Debtors' position is paradoxical at best. By raising the issue of fraud, debtors seek to avoid the terms of the leases negotiated with plaintiffs. These leases were negotiated by debtors' principals before the debtors were organized as corporations. With respect to the issue of fraudulent inducement, therefore, debtors identify the actions of their principals as actions of their own.
Turning to the release in dispute, the release was also negotiated and executed by all the principals of the debtors. In contrast to their position on the issue of fraudulent inducement, however, the debtors now seek to avoid the effect of the release by interposing a legal gap between the debtors and their principals. This position is simply untenable.
The effect of a release must be determined by reference to the terms of the release and the intentions of the parties. Gladings v. Laughlin, 51 Ill.App.3d 694, 9 Ill.Dec. 173, 175, 366 N.E.2d 430, 432 (1977). According to the unambiguous terms of the release in the instant case, the debtor corporations as such, as well as all the debtors' principals, explicitly released all claims against plaintiffs. Inasmuch as this unequivocal release was executed by all of the debtors' principals, this court finds, as a matter of law, that the parties intended to bind both the debtor corporations and their respective principals by the terms of the release.
2. Debtors further contend that plaintiffs obtained the signatures of debtors' principals through fraud. The thrust of debtors' argument is that Rabbi Nayman, who is one of the plaintiffs, and, apparently, a religious leader for some of the debtors' principals, improperly used his spiritual influence over the debtors' principals in order to induce them to sign the release.
This court simply cannot accept the debtors' allegations. The debtors' principals alleged, prior to the execution of the release, that the plaintiffs fraudulently induced them to enter the original lease. Indeed, it was these allegations which prompted plaintiffs to negotiate for a release. Furthermore, the specific mode of fraud which is alleged to have occurred with respect to the lease is precisely that mode of fraud which the debtors now allege in relation to the release, i.e. that Rabbi Nayman improperly used his spiritual influence over debtors' principals in order to induce them to sign. To suggest that debtors' principals were duped by Rabbi Nayman into signing the release despite the fact that the principals had, prior to the negotiation of the release, consistently alleged fraud on Rabbi Nayman's behalf is a bit incredible.
The debtors' principals are sophisticated in business relations. Throughout negotiations *141 for the release, debtors' principals were represented by counsel. Pursuant to an agreement which was executed with and in consideration for the release, debtors were given substantial financial benefits by the plaintiffs. Indeed, according to the deposition of Mr. Osina, who was among those who negotiated the release for debtors, the debtors executed the release in order to maintain possession of the nursing homes. Osina deposition 336-348. Based on the foregoing, it is the opinion of this court that no viable issue exists with respect to fraudulent inducement in the execution of the release.
3. Finally, debtors contend that the release fails for lack of consideration. Debtors argue that plaintiffs covenanted, in consideration for the release, to fulfill all obligations owed by plaintiffs under the original lease. The debtors claim that since plaintiffs have not fulfilled these covenants, the release fails for lack of consideration.
Pursuant to the unambiguous language of the release, the performance of plaintiffs' obligations under the original leases is not an element of consideration for the release. The only language in the release that refers to plaintiffs' obligations under the original leases states:
. . . O.M.K. Corporation, an Illinois corporation; K.M.O. Corporation, an Illinois corporation; . . . do hereby RELEASE and FOREVER DISCHARGE the CENTRAL NATIONAL BANK IN CHICAGO, . . . of and from any and all claims of every kind . . . including any existing claims for fraudulent inducement, misrepresentation or omissions, but excluding from this release all obligations, covenants, and undertaking of the respective lessors under said leases and option agreements. . . .
Contrary to debtors' claims, the language does not make plaintiffs' performance of the covenants in the leases an element of consideration. Rather, this language merely removes the covenants of the original leases from the operation of the release. Thus, any claims that debtors have for violations of those covenants is not barred by the release. However, a violation of those covenants will not affect the enforceability of the release.
A careful examination of the release and agreement, and the testimony in the record compels the conclusion that debtors were granted a more lenient payment schedule in return for the release. Debtors do not allege that plaintiffs have failed to adhere to the payment schedule outlined in the agreement. Therefore, there has been no failure of consideration.
It is therefore the opinion of this court that:
1. Debtors are precluded from raising the issue of fraud in relation to the leases between debtors and plaintiffs, and,
2. No further testimony on this issue may be presented in this matter.