**In re Carl F. SEMRAU D.D.S., LTD., a dissolved Illinois corporation, Debtor.**

**No. 01 B 08648.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 14, 2006.

Kevin T. Keating, Keating & Shure, Robert J. Slobig, Zoran Dragutinovich, Torshen, Slobig, Genden, Dragutinovich, Chicago, IL, for Debtor.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motion of Carl F. Semrau and Carl F. Semrau, D.D.S., Ltd., an Illinois corporation (the "Debtors") for sanctions pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 1927 against Mary O'Connor, Cynthia Hamilton f/k/a Cynthia Semrau, James Schelli, Jr., Webster & Schelli, P.C., and Clausen Miller PC (the "Respondents"). The Debtors' motion is challenged by the motions of the Respondents to dismiss and/or object to the Debtors' motion under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). For the reasons set forth herein, the Court denies the Debtors' motion and grants the Respondents' motions to dismiss. The Court concludes that laches bars the relief sought, that the Debtors have unreasonably delayed the relief sought, and the Respondents have been prejudiced by such delay.

### I. FACTS AND BACKGROUND

Some of the facts and background of the two Debtors' respective cases are contained in a prior opinion of the Court. *In re Semrau*, No. 01 B 08648, 2005 WL 3242332 (Bankr.N.D.Ill. Dec. 1, 2005). Both Debtors filed their respective Chapter 7 petitions with this Court on March 14, 2001. The individual Debtor was the sole shareholder and officer of the corporate Debtor. Separate Chapter 7 interim Trustees were appointed for the two bankruptcy estates which have now been fully administered. Carl's case was closed on

August 5, 2005, after he received his discharge. The Debtors' motion was filed on June 22, 2006 after the trustee in this case had filed a final report and account which has previously been approved without objection. Not all allowed creditors' claims were satisfied or paid in full in this case, so there was no excess estate property to revert to this Debtor for the benefit of its shareholder, Carl. It appears that the instant motions are the last remaining matters pending in this corporate case.

During the course of administration the corporate shares of stock were abandoned by the Trustee in the individual case pursuant to 11 U.S.C. § 554 and thereby reverted to the individual Debtor, a licensed and practicing dentist. Because neither case administration resulted in the full payment of all allowed claims, the Court held, in part, that the individual Debtor lacked standing to object to a creditor's claim in his individual case. *In re Semrau*, 2005 WL 3242332, at *5–6. That holding is significant here for the same logical reasons, as there are no excess funds after payment of all allowed claims to revert back to the corporate Debtor for the benefit of its shareholder, Carl. Respondents Mary O'Connor and Cynthia Hamilton contend that although the corporate entity is one of the movants in this matter, it was involuntarily dissolved and has not been revived or reinstated. This is evidenced by a copy of a report from the Illinois Secretary of State appended to the file by Mary and Cynthia showing the Debtors' involuntary dissolution on October 1, 2001. The Debtors contend that the corporation had been reinstated after the involuntary dissolution and is now in good standing. This opinion assumes that the corporation has been reinstated.

The instant motion is unrelated to the prior litigation involving that creditor's claim, but it arises after the conclusion of

protracted and contentious litigation in state court related to the dissolution of the marriage of Carl and Cynthia. The Debtors contend that the Respondents filed false pleadings and vexatiously and unreasonably multiplied the proceedings in this Court in order to injure and disadvantage them. The Debtors seek redress for what they conclude was a six-year campaign of litigation abuse against them by the various Respondents, most of which allegedly took place before this Court.

Respondent Cynthia Hamilton is the individual Debtor's former spouse. Their marriage was dissolved in an Illinois state court by judgment entered on July 18, 2002. Respondent Mary O'Connor is the sister of Cynthia Hamilton and is an Illinois attorney who was affiliated with Respondent Clausen Miller P.C. The Debtors' motion asserts that Cynthia and Mary conceived a plan to harm Debtors personally, professionally, and financially. In 1998, after Mary directed other attorneys to file a state court complaint on Cynthia's behalf to dissolve her marriage with Carl, Mary allegedly stated to various people that she would "destroy him." The motion also alleges that in 1999, Mary, through Clausen Miller and on behalf of Cynthia, filed a state court law division complaint against the Debtors and others claiming an interest in the dental practice. Allegedly, Mary also claimed, among other things, that Carl looted the dental practice and secreted moneys and proceeds to which Cynthia was entitled. Further, the motion asserts that the Debtors were forced to defend these allegedly false claims at their own expense, all while Cynthia was engaging in wrongful conduct in the state court cases, including making exorbitant demands to settle the dissolution case, engaging in abusive discovery practices, and attempting an extortion scheme orchestrated by Mary. Ten pages of the Debtors' thirty-six page motion at bar relate to

Cynthia and Mary's allegedly wrongful acts in the two state court cases, which does not need further collaboration.

The upshot of the state court litigation resulted in the Debtors filing their petitions in this Court in 2001. The Debtors allege that Cynthia and Mary persisted in their efforts against the Debtors in this Court by filing separate adversary proceedings related to each Debtor's case, reiterating false and untrue allegations made in the state court law division case. Moreover, they allegedly filed false claims in both cases, engaged in duplicative and inappropriate discovery, and among other things, filed an improper motion in the corporate debtor's case in the nature of an objection to discharge, which by law cannot be obtained as Chapter 7 discharges can only be issued for individual debtors. They were allegedly aided by Respondent James Schelli, Jr., an Illinois attorney who at relevant times represented Cynthia and Mary in various matters before this Court in connection with both Debtors' cases. He is a member of Respondent Webster & Schelli P.C. The Debtors' motion alleges that Schelli, in claim settlement negotiations, attempted to blackmail Carl, wrongfully asserting that Carl had violated bankruptcy criminal statutes. The Debtors also allege that Schelli, Cynthia, and Mary engaged in improper conduct in connection with the dismissal of the adversary proceedings, the withdrawal of Cynthia's claims, and the purchase of estate assets from the Trustees of both bankruptcy estates.

The motion further alleges that such action led the Trustee of the corporate Debtor to file a separate action against Cynthia and Mary to recover the unpaid balance of the agreed purchase price for the estate assets sold by that trustee. Allegedly, Cynthia and Mary had possession of the estate assets but had not paid the balance for over two years. The motion asserts that they, together with Schelli's participation and abatement, wrongfully accused Carl or another creditor of possessing the estate assets. Thus, the Debtors allege that as a result of such improper conduct, Carl expended three hundred thousand dollars of his own and borrowed funds to the detriment of himself and his dental practice. Clausen Miller allegedly failed in its duty to supervise its member attorney, Mary, and failed to restrain and prevent her from engaging in the alleged misconduct. Clausen Miller allegedly required her to resign from the firm, notwithstanding that it allegedly benefitted from her and Cynthia's wrongful activities. Similarly, Webster & Schelli allegedly failed to supervise Schelli's actions on behalf of Mary and Cynthia. Thus, the Debtors conclude that this Court should impose appropriate sanctions against the Respondents pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1927 to pay the Debtors' costs and attorneys fees plus an appropriate sanction, all in unspecified amounts.

Counsel for Cynthia and Mary filed a motion to allow Fed. R. Bankr.P. 7012 apply to the Debtors' motion pursuant to Rule 9014(c). That was not opposed by the Debtors. This was followed by Cynthia and Mary's motion to dismiss under Rule 7012 incorporating Fed R. Civ. P. 12(b)(6). Cynthia and Mary raised various defenses to the Debtors' motion, including laches, res judicata, release, lack of subject matter jurisdiction, the *Rooker–Feldman* doctrine, and lack of standing. They assert that the prior state court litigation in both the dissolution and law division cases was settled over four years ago in July 2002, and the adversary proceedings before this Court were concluded in 2002, 2003, and 2004. Thus, Cynthia and Mary claim that the Debtors' motion is both untimely and barred at this time by one or more of the foregoing defenses. Schelli and his firm,

Webster & Schelli, have filed a separate motion to dismiss referencing Rule 12(b)(1) and (6) on the grounds of res judicata, lack of standing, laches, and statute of limitations. The motion also adopts the other Respondents' grounds for dismissal. Clausen Miller has filed its motion to "object" to the Debtors' motion but references Rules 7012 and 12(b)(1) and (6). Clausen Miller raises some of the other Respondent's defenses including lack of subject matter jurisdiction, laches, res judicata, lack of standing, and statute of limitations. This motion points out that the firm's alleged failure to supervise one of its member attorneys, who left the firm in March 2002, is not a core matter under 28 U.S.C. § 157(b)(2), and that this Court lacks the authority to address or remedy the alleged abuses that occurred in the two state court proceedings.

 Thus, since all the Respondents raise challenges to the sufficiency of the Debtors' motion for sanctions against them and the jurisdiction of this Court to proceed, the Court will consider and discuss the various defenses and arguments raised by the Respondents. In addition, Cynthia and Mary ask this Court to take judicial notice of several state court orders and judgments entered in the state court proceedings as well as some of the papers filed in the matters before this Court. The Court may take judicial notice of orders and judgments entered by the state court in those proceedings because those orders and judgments are matters of public record. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994) (finding that court may take judicial notice of matters of public record); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (same); *Baldi v. Carey (In re Estate of Royal),* 289 B.R. 913, 918 (Bankr.N.D.Ill. 2003) (same). This Court takes judicial notice of the following state court orders

and judgments: *Semrau v. Donner,* No. 99 L 11230 (Ill.Cir.Ct. Aug. 22, 2000) (order granting, in part, defendant's motion to reconsider); *Semrau v. Donner,* No. 99 L 1230 (Ill.Cir.Ct. Jul. 10, 2002) (order granting motion to dismiss); *Semrau v. Semrau,* No. 98 D 14797 (Ill.Cir.Ct. Jul. 18, 2002) (judgment for dissolution of marriage).

## II. *DISCUSSION*

### A. The Respondents' Motions to Dismiss the Motion for Sanctions

#### 1. Federal Rule of Civil Procedure 12(b)(1)

Initially, the Court must address the challenges to the Debtors' motion on the basis of lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and its bankruptcy analogue Federal Rule of Bankruptcy Procedure 7012. Clausen Miller contends that the Court lacks jurisdiction under section 105 to address the alleged abuses in the state court proceedings and can only deal with any abuses committed in this Court. Respondents argue that relief under section 1927 for Clausen Miller's alleged failure to properly supervise Mary is not a core matter. Furthermore, it claims that she only filed one entry of appearance in this case using the firm's name on May 23, 2001, and subsequently left the firm on March 1, 2002. No pleadings were filed thereafter on behalf of the firm. The motion cites to *In re Volpert,* 110 F.3d 494 (7th Cir.1997) for the point that section 105(a) grants this Court power to implement the provisions of title 11 (the Bankruptcy Code), which includes prevention of abuse of the bankruptcy process and which allows sanctions against parties and attorneys who unreasonably and vexatiously multiply the proceedings before the Bankruptcy Court. Thus, the Respondents contend that any

failure to supervise an attorney in state court proceedings is beyond the authority of this Court under section 105(a). Further, the Respondents assert that any remedy for actions occurring in the state court can only be ordered by the state court.

Mary and Cynthia point out in their motion that Carl's individual bankruptcy case was closed after full administration of the estate by final order entered on August 5, 2005, over a year ago. They claim that it is "axiomatic that this Court lacks subject matter jurisdiction to award relief in this case for conduct alleged to have occurred in another bankruptcy case." Moreover, "the conduct complained of pertains to a capital gains tax issue that arose between Cynthia and the trustee in Carl's Chapter 7 Case subsequent to Cynthia's court-approved purchase of certain property of that bankruptcy estate." That dispute was settled between Cynthia and the trustee and should not be collaterally attacked by the Debtors now in this corporate case.

■ Schelli and Webster & Schelli P.C. do not specifically argue the lack of subject matter jurisdiction defense in their papers. Thus, they have forfeited the point for failure to develop and support it with pertinent authority. *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990); *LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 921 (7th Cir.1997).

■ There are two types of Rule 12(b)(1) jurisdictional challenges: those that attack the sufficiency of the allegations and those that attack the factual basis for jurisdiction. *Bozich v. Mattschull (In re Chinin USA, Inc.)*, 327 B.R. 325, 330–31 (Bankr.N.D.Ill.2005). In ruling on a "facial" attack, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the movant. *Id.* at 331.

In ruling on a "factual" attack, however, a court "may properly look beyond the jurisdictional allegations of the complaint ... to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir.1999) (internal quotation omitted). If the respondent submits evidence that casts doubt on a court's jurisdiction, the "presumption of correctness" usually accorded to jurisdictional allegations disappears. *Id.* at 856. In the end, the movant Debtors bear the burden of establishing the existence of federal jurisdiction by competent proof. *Id.* at 855.

■ Turning to the Court's subject matter jurisdiction, 28 U.S.C. § 1334(a) vests original and exclusive jurisdiction of this bankruptcy case with the United States District Court for the Northern District of Illinois. By its Internal Operating Procedure 15(a) and 28 U.S.C. § 157(a), the District Court has referred this case (and all other bankruptcy cases) to the bankruptcy judges of this District, who collectively constitute a unit of the District Court under 28 U.S.C. § 151. Under 28 U.S.C. § 157(b)(1), "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). The Debtors' motion for sanctions is premised on 11 U.S.C. § 105(a) and 28 U.S.C. § 1927.

■ The Court rejects the argument that it lacks subject matter jurisdiction of this motion for sanctions. First, the Court has previously held that it has subject matter jurisdiction of a motion for sanctions under Bankruptcy Rule 9011, a more commonly encountered sanctions remedy

in bankruptcy court. *State Bank of India v. Kaliana (In re Kaliana),* 207 B.R. 597, 603 (Bankr.N.D.Ill.1997). Accordingly, the imposition of sanctions pursuant to Bankruptcy Rule 9011 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). *In re Memorial Estates, Inc.,* 132 B.R. 19, 22 (N.D.Ill.1991). In addition, logic compels the conclusion that the Debtors' invocation of § 105 of the Bankruptcy Code similarly vests this Court with subject matter jurisdiction because that section is a part of the Bankruptcy Code which this Court has the proper authority to apply via 28 U.S.C. § 1334 and the District Court's automatic reference rule, Internal Operating Procedure 15(a). Finally, it has been noted in dicta by the Seventh Circuit that bankruptcy courts have jurisdiction to award sanctions sought pursuant to 28 U.S.C. § 1927. *Adair v. Sherman,* 230 F.3d 890, 895 n. 8 (7th Cir.2000). Lastly, this Court as a statutory unit of the District Court under 28 U.S.C. § 151, is a part of that federal court, and the U.S. Supreme Court has long held that all courts have inherent sanctioning implied authority in order to function and enforce their orders and judgments. *See Chambers v. NASCO,* 501 U.S. 32, 50–51, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

■ Thus, the Debtors' motion for sanctions is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Therefore, the Court may enter appropriate orders and judgments under 28 U.S.C. § 157(b)(1) and rejects the Respondents' challenges to the Courts subject matter jurisdiction over the Debtors' motion.

■ The Court does agree, however, with the points raised by the Respondents that its authority to sanction should be limited to any proven wrongful and sanctionable conduct committed in this corporate case. Any sanctions for wrongful conduct in the individual bankruptcy case should have been levied there. That case has been closed for over a year and sanctions for conduct in that case are not proper here. The Court also agrees that sanctions for conduct in state court should be levied in that state court, not here. Thus, while the Court denies the objections that it lacks subject matter jurisdiction to impose sanctions in this corporate bankruptcy case for conduct proscribed under either section 105(a) or section 1927, it would be inappropriate to consider and impose any sanctions for conduct in either of the state court cases or the individual bankruptcy case in this matter. While a Debtor's exemptions under Illinois law may be "stacked" under *In re Barker,* 768 F.2d 191 (7th Cir.1985), there is no persuasive analogy or authority cited by the Debtors for the proposition that claimed sanctionable conduct in the two state court cases and the individual bankruptcy case, or any of the related adversary proceedings in the two bankruptcy cases, can be "stacked" and remedied here in this corporate bankruptcy case.

■ Next, Cynthia and Mary argue that the *Rooker–Feldman* doctrine serves as a bar to the relief sought by the Debtor. In particular, they contend that the state court dissolution proceeding was settled by Cynthia and Carl when they granted each other a full and complete mutual release of their claims, including the matter of payment of professional fees and costs, which was inextricably intertwined in the judgment of dissolution entered by the state court after an evidentiary hearing where both parties testified and the court decided a number of occasions for requested fees and costs. Thus, they conclude that the Debtors' instant motion asks this Court to review those matters actually decided by the state court, which this Court cannot do under *Rooker–Feldman.*

■ The doctrine emerged from two United States Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine prohibits inferior federal courts from reviewing state court decisions via direct or indirect collateral attacks. *Rooker*, 263 U.S. at 416, 44 S.Ct. 149; *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303. Specifically, it is a jurisdictional doctrine premised on the basis that, because federal district courts, and units thereof like this bankruptcy court, are courts of original jurisdiction, such lower federal courts are not authorized to review appeals from state court judgments, except where Congress has authorized such collateral review (such as habeas corpus petitions). *See Crestview Vill. Apts. v. United States Dept. of Hous. & Urban Dev.*, 383 F.3d 552, 555–56 (7th Cir.2004). The Supreme Court recently clarified the doctrine and stated that it bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

■ The *Rooker–Feldman* doctrine only applies if the party had a reasonable opportunity to raise the claims in the state court proceeding. *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 534 (7th Cir.2004). The doctrine applies to direct attacks on state court judgments as well as "claims that are inextricably intertwined with state court determinations." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999). Whether a claim is "inextricably intertwined" with a state court judgment depends on "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir.2002). The relevant inquiry in each matter is whether the lower federal court "is in essence being called upon to review the state-court action." *Zurich Am. Ins. Co. v. Superior Ct.*, 326 F.3d 816, 823 (7th Cir.2003). If "success in the federal court would require overturning the state court decision," the federal court lacks jurisdiction over the matter. *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir.2003). The Supreme Court makes it clear that the doctrine only applies to cases filed "by state-court losers" attempting to have a federal court reexamine a state court decision. *Exxon*, 544 U.S. at 284, 125 S.Ct. 1517.

The Court finds that the doctrine is inapplicable here. The motion by the Debtors does not directly or indirectly seek to collaterally attack any of the state court orders that this Court can take judicial notice of, nor is this Court being asked to review or overturn any of those orders. The specific relief sought in this Court under either section 105(a) or section 1927 was not sought, nor was it available, in either state court action from those parts of the records furnished here. Rather, the instant Debtors' motion contends that due to the alleged conduct committed by the Respondents in this Court, they are entitled to the relief requested here. Moreover, since both the state court cases were settled among those parties, it is difficult to find that either Debtor was a loser and improperly seeking to overturn the state court decisions in this Court. Thus, the Court rejects the argument that the *Rooker–Feldman* doctrine deprives this Court of proper subject matter jurisdiction to consider the Debtors' motion.

## 2. Federal Rule of Civil Procedure 12(b)(6)

■ In order for the Respondents to prevail on their motions to dismiss the Debtors' motion under Federal Rule of Civil Procedure 12(b)(6) and its bankruptcy analogue Federal Rule of Bankruptcy Procedure 7012, it must clearly appear from the pleadings that the Debtors can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Xechem, Inc. v. Bristol–Myers Squibb Co.,* 372 F.3d 899, 901–02 (7th Cir.2004); *Weizeorick v. ABN AMRO Mortgage Group, Inc.,* 337 F.3d 827, 829 (7th Cir.2003). Moreover, the Court must take as true all well-pleaded material facts in the motion, and must view these facts and all reasonable inferences which may be drawn from them in a light most favorable to the Debtors. *See McCready v. EBay, Inc.,* 453 F.3d 882, 888 (7th Cir.2006); *Barnes v. Briley,* 420 F.3d 673, 677 (7th Cir.2005). The issue is not whether the Debtors will ultimately prevail, but whether they have pleaded a cause of action sufficient to entitle them to offer evidence in support of their claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the allegations, not to decide the merits of the matter. *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1406 (N.D.Ill.1996) (*citing Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir.1990)). The Seventh Circuit recently remarked that in order to survive a motion to dismiss for failure to state a claim "the [movant] does not have to 'show' anything; he need only allege." *Brown v. Budz,* 398 F.3d 904, 914 (7th Cir.2005).

The Court finds that the motions to dismiss must be denied on 12(b)(6) grounds. The movants have pled sufficient facts to entitle them to offer evidence to support their claims that the Respondents filed false claims and pleadings in this case to harass and embarrass the Debtors as part of a scheme to harm the Debtors and to disrupt and delay the orderly administration of this case. The Debtors' motion is not so bereft of facts that they have pleaded themselves out of this Court or that they failed to state a claim which would entitle them to any relief sought, especially because the Court must take as true all the well-pleaded facts and must view these facts in a light most favorable to the Debtors.

## B. Whether the Debtors have Standing to Bring this Motion

The Respondents all argue that the Debtors lack standing to bring this motion for sanctions. Although the argument has not been articulated in detail or with crystal clarity, it is clear that each movant's standing must be separately analyzed and determined. They allege that the Respondents, individually and collectively, engaged in a concerted effort to wage a legal war of attrition to the personal, professional, and financial detriment of the Debtors during the course of their cases, resulting in the filing of both bankruptcy cases. The Debtors' motion alleges that both Debtors were thereby compelled to expend and borrow substantial funds to defend against the alleged wrongful conduct of the Respondents.

■ Standing pertains to whether a litigant "is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In federal court, standing has two aspects: constitutional and "prudential." *Goldberg & Assocs., Ltd. v. Holstein (In re Hol-*

*stein)*, 299 B.R. 211, 223 (Bankr.N.D.Ill. 2003).

 "The constitutional aspect comes from the 'case or controversy' requirement in Article III. To meet that requirement, a plaintiff seeking relief must have suffered an 'injury in fact.' " *Id.* The conditions that endow parties with standing to participate in bankruptcy proceedings are more limited than those that suffice to establish standing under Article III of the U.S. Constitution, and parties must be "directly and adversely affected pecuniarily" by an order of the bankruptcy court in order to have standing. *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir.1992) (internal quotation omitted).

 "The 'prudential' aspect, on the other hand, involves standing limits that are 'essentially matters of judicial self-governance' meant to ensure that the courts only resolve disputes suitable for judicial resolution." *Holstein*, 299 B.R. at 223 (*quoting Warth*, 422 U.S. at 499–500, 95 S.Ct. 2197). One such limit mandates that a litigant suing under a statute " 'fall within the zone of interests protected or regulated by the statute or constitutional guarantee in question.' " *Id.* (*quoting FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir.1988) (internal quotation omitted)). This is often referred to as statutory standing. *Id.* Statutory standing requires that "the particular federal statute the plaintiff seeks to invoke must afford the plaintiff a right to relief." *FMC Corp.*, 852 F.2d at 988.

 The Respondents contest the Debtors' standing. Respondents Clausen Miller, Schelli, and Webster & Schelli, however, have not developed their arguments, nor supported same with any applicable authority and, thus, have forfeited the point. Respondents Cynthia and Mary contend that the Debtors' motion seeks

reimbursement to the respective Chapter 7 estates, and that only the Trustees in the two related bankruptcy cases have standing to seek such sanctions for that reason. In fact, the prayer for relief asks this Court to: (1) impose an appropriate sanction for the alleged abuse of the bankruptcy proceedings and filing of false claims and pleadings; (2) require the attorney and law firm respondents to pay the excess costs, expenses, and attorneys' fees incurred because of the alleged unreasonable and vexatious multiplication of the proceedings; and (3) award the movants costs and attorneys' fees incurred herein. Thus, none of the relief sought is for the benefit of the bankruptcy estates, which are now closed and fully administered. Accordingly, the court finds that this objection is not well-founded; both debtors are asserting actual damages arising from the alleged conduct, which satisfies the standing requirement of having a direct and adversely affected pecuniary interest.

 The court also finds that both Debtors have statutory standing. The statutes in question are § 105(a) of the Bankruptcy Code and 28 U.S.C. § 1927. They respectively provide in pertinent part as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Any attorney or other person admitted to conduct cases in any court of the Unites States or any Territory thereof who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

 "Despite the open-ended language of § 105(a), courts have carefully limited the circumstances in which it should be used. Otherwise, there is a real risk that more particular restrictions found throughout the Code would amount to nothing, because the court could always use the residual equitable authority of § 105(a)." *Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir.2005). Section 105 encompasses the power to issue an order to sanction an attorney who multiplies proceedings unreasonably and vexatiously under the same circumstances and standards that would warrant sanctions under 28 U.S.C. § 1927. *See Adair v. Sherman*, 230 F.3d 890, 895 n. 8 (7th Cir.2000); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir.2000); *In re Volpert*, 110 F.3d 494, 500–01 (7th Cir.1997); *see also Troost v. Kitchin (In re Kitchin)*, 327 B.R. 337, 367 (Bankr.N.D.Ill.2005). Nevertheless, a court should rely on available authority conferred by statutes and procedural rules, rather than its general or inherent power, if the available sources of authority would be adequate to serve the court's purpose. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1058–59 (7th Cir.1998). Attorneys can be sanctioned under § 1927 if they unreasonably and vexatiously multiply proceedings in any case. *Id.* The Seventh Circuit has held that a bankruptcy judge can sanction an attorney under the authority of 28 U.S.C. § 1927. *Adair v. Sherman*, 230 F.3d 890, 895 n. 8 (7th Cir.2000).

 The purpose of § 1927 " 'is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.' " *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir.2005) (*quoting Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir.1989)). Either subjective or objective bad faith is a prerequisite for awarding sanctions under this section. *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 614 (7th Cir.2006). "Subjective bad faith, the more difficult type of bad faith to prove, is not always necessary. Subjective bad faith must be shown only if the conduct under consideration had an objectively colorable basis." *Id.* (citations omitted). The standard for objective bad faith, on the other hand, "does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Id.* A court has discretion to impose § 1927 sanctions

> when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice, pursued a claim that is without a plausible legal or factual basis and lacking in justification, or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound[.]

*The Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir.2006) (citations omitted). Section 1927 "impose[s] a continuing duty upon attorneys to dismiss claims that are no longer viable." *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir.1990).

The Court concludes that the Debtors have standing to seek sanctions against the Respondents and, thus, rejects the challenge on this ground. The Debtors have both shown and alleged an actual pecuniary loss as a result of the conduct complained of and the Seventh Circuit has

noted that section 105(a) may be used to punish both litigants and attorneys. *In re Rimsat,* 212 F.3d 1039, 1048 (7th Cir.2000). The case law in the lower federal courts in this circuit is split on the issue of whether or not the bankruptcy court can properly impose sanctions under section 1927. *See In re Regensteiner Printing Co.,* 142 B.R. 815, 817–19 (N.D.Ill.1992) (disallowing section 1927 sanctions because bankruptcy courts are not "courts of the United States"); *In re Schatz,* 122 B.R. 327, 328 (N.D.Ill.1990) (bankruptcy courts not granted contempt powers under 28 U.S.C. § 401 as "courts of the United States"); *In re Chambers,* 140 B.R. 233, 237–38 (N.D.Ill.1992) (bankruptcy courts qualify as "courts of the United States" for purposes of awarding fees under 26 U.S.C § 7430); *In re Korhumel Indus., Inc.,* 103 B.R. 917, 920–21 (N.D.Ill.1989) (bankruptcy courts are not "courts of the United States" for purposes of hearing declaratory judgments); *In re Memorial Estates, Inc.,* 116 B.R. 108, 110 (N.D.Ill.1990) (noting, in dicta, that it was "questionable whether the bankruptcy court had jurisdiction to impose sanctions" under § 1927 to anyone); *In re Memorial Estates, Inc.,* 132 B.R. 19, 20–21 (N.D.Ill.1991) (noting, in dicta, that judges have "well-grounded" concerns that bankruptcy judges do not have authority to impose sanctions exclusively under § 1927); *In re Volpert,* 177 B.R. 81, 84 n. 5 (Bankr.N.D.Ill.1995). However, the Seventh Circuit has upheld sanctions assessed under the section in *In re TCI Ltd.,* 769 F.2d 441 (7th Cir.1985) and *In re Lewis,* 920 F.2d 935, 1990 WL 208777 (7th Cir. Dec. 12, 1990) (unpublished disposition) without directly discussing the bankruptcy court's jurisdiction to impose sanctions under the section. A special note regarding the challenge to the corporate Debtor's standing is in order given its unique status of apparently having been involuntarily dissolved by the Illi-

nois Secretary of State on October 1, 2001. The Debtors' motion was filed on June 22, 2006, within the five-year period following the corporate Debtor's dissolution as an Illinois corporation. Pursuant to 805 ILCS 5/12.30 (c)(4), dissolution of a corporation does not prevent suit by or against a corporation in its corporate name. Moreover, 805 ILCS 5/12.80 further provides that the dissolution of an Illinois corporation shall not take away nor impair any civil remedy available to such corporation for any right or claim existing prior to such dissolution if the action or other proceeding is commenced within five years after the date of such dissolution. Such action may be prosecuted by the corporation in its corporate name. Thus, the relief sought by the corporate Debtor was requested within that applicable five-year period and it had statutory standing to seek the relief sought even though the five years have now run at this time. Furthermore, the Debtors contend that the corporation has been reinstated in good standing and is no longer dissolved.

**C. Whether Res Judicata Bars the Debtors' Motion to Sanction Clausen Miller**

 Next, the Court must determine whether the instant Debtors' motion is barred by the doctrine of res judicata in light of the various state court orders furnished with Cynthia and Mary's motion. Because an Illinois state court rendered the judgments and orders at issue, the Court must look to Illinois law to determine whether res judicata bars the Debtors' relief. *4901 Corp. v. Town of Cicero,* 220 F.3d 522, 529 (7th Cir.2000); *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 560 (7th Cir.1999).

 Under the doctrine of res judicata or claim preclusion, a final judgment on the merits issued by a court of compe-

tent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (1998). Res judicata bars the subsequent suit between parties involving the same cause of action and "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.* In order for the doctrine of res judicata to apply, three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of the causes of action; and (3) there is an identity of parties or their privies. *4901 Corp.*, 220 F.3d at 529 (*quoting River Park*, 234 Ill. Dec. 783, 703 N.E.2d at 889); *see also Nowak v. St. Rita High Sch.*, 197 Ill.2d 381, 258 Ill.Dec. 782, 757 N.E.2d 471, 477 (2001).

There is no real dispute that the first element is present because the Illinois state circuit court that entered the furnished orders in the dissolution and law case is a trial court of general jurisdiction and the judgments entered therein were final. *See* Ill. Const. Art. VI § 9. But the requirements of the second and third elements are not present. The causes of action raised in the state law and dissolution actions did not include the relief sought in this motion under either 11 U.S.C. § 105(a) or 28 U.S.C. § 1927. Moreover, the parties in the state actions are not identical nor did they involve privies under law who are all present in this Court. Thus, the Court concludes that the doctrine of res judicata does not bar the instant Debtors' motion.

**D. Whether the Doctrine of Laches Bars the Debtors' Motion**

 The Respondents all argue that the doctrine of laches bars the Debtors' motion for sanctions. Specifically, Cynthia and Mary contend that the state court law division litigation was dismissed as settled by final order entered on July 10, 2002, as to Carl, and that the corporate Debtor was never a party thereto. They also contend that the state dissolution case was settled by a final agreed judgment on July 18, 2002, and that adversary proceedings had been dismissed in this Court in 2003 and 2004. The two bankruptcy cases in this Court have been fully completed with the estates administered by the respective trustees. Carl's case closed over a year ago and, in the instant case, the Trustee's final report had been filed and approved without objection shortly after the Debtors filed the instant motion, leaving the Debtors' motion and the Respondents' motion as the only remaining matters to be resolved before the closing of this case. Cynthia and Mary thus argue that the passage of time has resulted in prejudice to them and that the Debtors are guilty of unreasonable and inexcusable delay. They assert that because Cynthia has relocated to Florida years ago and memories of crucial witnesses have eroded from the passage of time, costs attendant to needed testimony and records are now increased from what would have been incurred had the Debtors' motion been timely filed. The other Respondents invoke the laches defense but do not develop their arguments or cite relevant authority to support this defense.

 Laches is an equitable defense that is properly invoked when "unreasonable delay in pressing one's rights ... prejudices the defendant." *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir.1999). In order for laches to apply in a case, the party asserting the defense must establish two elements: (1) an unreasonable lack of diligence by the party against whom the

defense is asserted; and (2) prejudice arising from the delay. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir.2003); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 620 (7th Cir.2002); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir.1999). A defendant is prejudiced from delay in asserting a claim where the defendant has changed its position in a way that would not have occurred if the plaintiff had not delayed. *Hot Wax*, 191 F.3d at 824. The Seventh Circuit has noted that " 'laches is a question of degree' " and that " 'if only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should be barred is great.' " *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795 (7th Cir.2002) (*quoting Hot Wax*, 191 F.3d at 824).

The Debtors respond that because laches is an affirmative defense, it cannot be adjudicated properly on a motion to dismiss because affirmative defenses "normally cannot form the basis of a motion to dismiss, unless the plaintiff's complaint, on its face, proves all the elements of the ...defense." *Holzer v. Prudential Equity Group LLC*, 458 F.Supp.2d 587, 593–94 (N.D.Ill.2006). This is because for purposes of a motion to dismiss well pled facts are deemed to be true and inferences must be drawn in favor of the plaintiff under rules 7012 and 12(b)(6), not the defendants. Thus, the Debtors respond that it is premature to decide such alleged defenses at this stage, especially since no evidence has been adduced at this point to establish either of the required elements in support of the laches defense asserted by the Respondents. Moreover, the Debtors contend that the mere passage of time itself cannot constitute laches. *In re Midway Airlines*, 221 B.R. 411, 459 (Bankr.N.D.Ill. 1998).

The Respondents Mary and Cynthia note that their adversary proceeding filed on June 15, 2001, on which Schelli and his firm filed an appearance in August 30, 2001, was dismissed on a motion that they did not oppose on September 7, 2001. Cynthia's filed proof of claim was withdrawn without prejudice in January 2002, and she never subsequently took any action to refile or prosecute a claim against the estate. Cynthia and Mary also note that the Trustee's claim against them was resolved by the payment in full to the Trustee of the agreed sale price for the personal property and equipment sold years ago. They also claim that the Respondents expended substantial fees and expenses incurred in defending against the objections and claims of another creditor who was a former agent or employee of one or both Debtors. Finally, Cynthia and Mary claim that the Debtors' motion is really intended to relitigate that dispute which was resolved over two years ago.

The Court finds that it is not premature at this stage of the proceedings to decide the merits of the laches defense. If the Debtors slept on their rights, they may lose them. *See Hot Wax*, 191 F.3d at 820. It is not too early to decide the merits of this defense absent the opportunity for an evidentiary hearing because, as noted above, all of the disputes regarding the papers filed by the Respondent attorneys and law firms on behalf of Cynthia and themselves were filed years ago and resolved. Counsel for the moving Debtors in this matter filed his entry of appearance in this case on August 26, 2003. He and the other members of his firm who have filed papers on the various other matters before this Court have obviously been monitoring this case closely for nearly three years before filing the Debtors' motion at bar. The Court is under no illusions but that the Debtors' motion arises from the bitter and acrimonious state court litigation

which has infected the bankruptcy cases and related adversary proceedings involving the parties. There is no real doubt that both the Debtors' motion and the Respondents' respective challenges thereto seek to tax some unspecified portion of the attorneys' fees and costs incurred by the parties and shift them to the other side. No record has been made of the precise amounts sought by either side against the other, but it is abundantly clear to the Court that the matters at bar are based in spite and vitriol dating back many years. All the allegedly wrongful conduct and pleadings were filed by the Respondents years ago and, thus, could have been more properly sanctioned then rather than now, when this case is ready for closing. The costs and fees are also likely to be much greater if this matter proceeds further. Cynthia, the principal Respondent and whose interests the other Respondents were advocating, has relocated from this District to Florida, and the inevitable passage of time and attendant erosion of memories of third party witnesses has occurred. Thus, the Court finds that the Debtors have unreasonably delayed in bringing their motion for sanctions and that the Respondents have demonstrated prejudice arising from the delay in the costs and fees incurred in defending the Debtors' motion to date. Accordingly, the Court finds under the facts of this matter that the doctrine of laches applies to bar the relief sought. Enough is enough and this "sanctions spite" should end here and now.

**E. Whether the Language in the Release Bars the Debtors' Motion for Sanctions**

 Next, Cynthia and Mary argue that release language contained in the state court Judgment of Dissolution, which incorporated the Marital Settlement Agreement between Carl and Cynthia, is an absolute bar to all relief against her and "by logical extension to all of [her] legal counsel." A copy of the agreement has been furnished from the state court records. It provided, in pertinent part, at paragraphs 10.1 and 10.2 that Carl and Cynthia shall bear their respective attorneys' fees and costs. Paragraph 8.4 expressly stated "[t]he Parties agree and acknowledge that they shall release and hold each other harmless from any and all claims and causes of action arising on or before entry of the Judgment for Dissolution of Marriage, including but not limited to claims arising from any and all litigation whatsoever." In addition, paragraph 13.6 in relevant part contained the following:

> To the fullest extent permitted by law . . . each of the parties . . . hereby forever releases, remises, discharges, relinquishes, waives, . . . under any present or future law . . . or which he/she otherwise has, may have, . . . or might be entitled to claim in, to or against the property or assets of the other . . . and each party further covenants and agrees for himself/herself . . . and assigns, for the purpose of enforcing any and all of the rights relinquished under this Agreement; and each of the Parties agrees that in the event any claim . . . shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim . . . so instituted.

Thus, the Respondents claim that they have not filed a single paper in either bankruptcy case or the related Adversary proceedings since well prior to the execution of the Marital Settlement Agreement and that the above portions serve as a complete bar to the Debtors' motion and the relief sought here.

The Debtors respond first that none of the release language was agreed to or executed by the corporate Debtor, who is

one of the movants on the sanction motion, and that the text of the release language does not extend to attorneys or other agents of Cynthia. They point out that the second sentence of section 8.4 of the Marital Settlement Agreement states: "This mutual release shall not extend to parties other than Cynthia and Carl, and shall not prevent either Cynthia or Carl from bringing and/or prosecuting any claims they may have against any other individual or entity." Moreover, the Debtors contend that the release was for a limited purpose covering only release of marital property interests and post-decree claims for support, and not a general release of the other Respondents who acted as attorneys for Cynthia. Thus, the Debtors asserts that they are agents not within the scope of the release or its intent. Furthermore, the Debtors contend that much of the alleged conduct occurred after the Judgment of Dissolution was entered, such as the alleged false claims that the Debtors secreted and withheld from the Trustee some of the physical assets of the dental practice to the detriment of the estate and its creditors.

■■■■ A release is an abandonment of a claim to the person against whom the claim exists. *Int'l Ins. Co. v. Sargent & Lundy*, 242 Ill.App.3d 614, 182 Ill.Dec. 308, 609 N.E.2d 842, 848 (1993). The Seventh Circuit has noted that "[u]nder Illinois law, '[a] release is a contract and, as such, is subject to the traditional rules of contract interpretation.... The intention of the parties, thus, controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement.'" *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir.2003) (*quoting Doctor's Assocs., Inc. v. Duree*, 319 Ill.App.3d 1032, 253 Ill.Dec. 736, 745 N.E.2d 1270, 1281–82 (2001) (citations

omitted)); *see also Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664, 667 (1991). *See Matter of O.M.K. Corp.*, 3 B.R. 139, 140 (Bankr.N.D.Ill.1980) (*citing Gladinus v. Laughlin*, 51 Ill.App.3d 694, 9 Ill.Dec. 173, 366 N.E.2d 430, 432 (1977) (the effect of a release must be determined by reference to the terms of the release and the intentions of the parties)). The rights of the parties are limited to the terms expressed in the agreement. *Murphy v. S–M Delaware, Inc.*, 95 Ill.App.3d 562, 51 Ill.Dec. 42, 420 N.E.2d 456, 459 (1981). A release will not be construed to release claims not within the contemplation of the parties. *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill.App.3d 947, 148 Ill.Dec. 933, 561 N.E.2d 239, 242 (1990). Where a release is clear and explicit, the court must enforce it as written. *Continental Illinois National Bank & Trust Co. v. Sax*, 199 Ill.App.3d 685, 145 Ill.Dec. 705, 557 N.E.2d 475, 479 (1990). "[A] release, no matter how broad its terms, will not be construed to include claims not within the contemplation of the parties." *Chubb v. Amax Coal Co.*, 125 Ill.App.3d 682, 80 Ill.Dec. 917, 466 N.E.2d 369, 372 (1984). A general release will be held to apply only to claims in existence at the time the release is executed and "claims that originate subsequent to its execution are not discharged absent a clear expression of intent to that effect." *Id.* However, the fact that a release does not specifically mention a particular type of action or that a claim is not yet in existence when a release is executed does not necessarily mean that that type of action is not released. *See Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 472 N.E.2d 791 (1984). Once the defendant establishes the existence of the document, legal and binding on its face, the burden shifts to the plaintiff to prove it is invalid by clear and convincing evidence. *Meyer v. Murray*, 70 Ill.App.3d 106, 26 Ill.Dec.

48, 387 N.E.2d 878, 884 (1979); *McComb v. Seestadt,* 93 Ill.App.3d 705, 49 Ill.Dec. 15, 417 N.E.2d 705, 706 (1981). Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties. *Butcher v. United Electric Coal Co.,* 174 F.2d 1003, 1006–07 (7th Cir.1949).

A review of the above-quoted provisions from the Marital Settlement Agreement shows that the release language was not so broad as to encompass a general release of any and all claims the parties might have had against each other and does not contain any language indicating that the release was intended to cover any agents or attorneys of either party thereto. The corporate Debtor was not a party to the release so its claims against the Respondents under its motion were not barred or released by the settlement between the only parties thereto, namely Cynthia and Carl. No reference was made therein to the then pending bankruptcy cases including the matters at bar. Just as the release language could have been expanded to provide for release of the parties' agents and attorneys, but did not, so also could the provisions of the release language expressly covered any or all claims, present, past, or future, arising in or from either or both of the bankruptcy cases which had then been pending for over a year. The language employed by the parties is not so broad to encompass the claims made in the Debtors' sanctions motion. Thus, the Court concludes that the release language of the Marital Settlement Agreement does not serve to bar the Debtors' motion.

### F. Whether a Statute of Limitations bars the Debtors' motion

Reference is made to a statute of limitations defense in some of the Re-

spondents' papers, but no specific citation of one was given for either § 105 or § 1927. They have thus forfeited the point per *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990) and as a matter of law there is no statute of limitations with respect to either form of sanction. Fundamental principles of due process—notice and an opportunity to be heard—apply for all matters, including sanctions, whether under the latter statute as noted in *The Jolly Group,* 435 F.3d 717, 720 (7th Cir.2006) or the former statute as noted in *In re Rimsat, Ltd.,* 212 F.3d 1039 (7th Cir.2000). Because the only potential sanctions which could be properly entered in this matter are with respect to conduct in connection with this case, which is not yet closed, and its related adversary proceedings, the Debtors' motion is not time barred. The Respondents' arguments relative to Fed. R. Bankr.P. 9011 are thus inapposite and not controlling. It is the text of and judicial gloss emanating from §§ 105 and 1927 which are controlling. Thus, the Court rejects the Respondents' arguments that the Debtors' motion is barred by some statute of limitation.

### III. CONCLUSION

For the foregoing reasons, the Court denies the Debtors' motion for sanctions against the Respondents and grants the motions to dismiss the Debtors' motion, and finds that the laches defense bars the relief sought.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.