**In re the Matter of H. Burton SCHATZ, Debtor.**

**No. 90 C 4116.**

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1990.

Riccardo A. DiMonte, DiMonte & Lizak, Park Ridge, Ill., for plaintiff.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On January 19, 1988, the respondents in this action, Helen De Sarto, Executrix of the Estate of Stanley Cech; Ward Fisher and Karen Fisher Di Monte, filed a suit against petitioner, Mr. H. Burton Schatz, in Cook County Circuit Court. The complaint sought to avoid an allegedly fraudulent transfer. On February 3, 1988 a United States Bankruptcy court for the Northern District of Illinois entered an Order of Discharge of Debtor, discharging Mr. Schatz. In July, 1990 Mr. Schatz presented a motion for a Rule to Show Cause to the bankruptcy court, arguing that the Circuit Court action was in violation of the February 3 order. The court declined to hear the motion, however, ruling instead that a petition for civil contempt is not a "core" proceeding as defined by 28 U.S.C. § 157. Accordingly, the court determined that it had no statutory jurisdiction to adjudicate the motion.

Mr. Schatz has since moved this court either to withdraw the matter from the bankruptcy court and refer it to that court for proposed findings of facts and conclu-

---

sions of law, or remand the matter back to the bankruptcy court for determination and judgment.

■ The parties have framed the issue presented to this court as whether civil contempt proceedings are "core" or "non-core", but that characterization is not entirely correct. Rather, this court must decide the scope of the bankruptcy court's statutory authority to enforce its orders. That authority may differ depending upon whether the contemptuous act relates to an order entered in a core or non-core proceeding. The proceeding in issue here is contempt only in its narrowest construction. More precisely, it concerns the scope of the debtor's discharge in the bankruptcy court, a "core" matter.[1] Since the question of discharge is a "core" matter, the question whether someone violated the bankruptcy court's discharge order must also, in light of § 105, be a core matter. Thus, the court need not decide the limitations on the bankruptcy court's civil contempt power in non-core proceedings.[2]

### 1. *Statutory Authority*

■ Article III courts have both inherent and statutory power to issue civil and criminal contempt citations. *See, e.g. Michaelson v. United States Co.*, 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924), *Young v. United States*, 481 U.S.

787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). 28 U.S.C. § 401 (1948).[3] Bankruptcy courts, however, derive their power from Article I, rather than Article III. Thus, § 401, which grants contempt power to "a court of the United States" does not apply. The Bankruptcy court thus does not have contempt power unless Congress grants it and this Congress has done in 11 U.S.C. § 105. That statute provides that:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This language is clear and unambiguous. If it doesn't mean that bankruptcy judges have at least civil contempt powers, then it has practically no meaning at all. How, without some contempt power, is the bankruptcy court to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement" its orders? This court therefore holds that 11 U.S.C. § 105 is a statutory grant of civil contempt power to the bankruptcy courts.[4]

---

**1.** The Seventh Circuit has adopted the Fifth Circuit's test for deciding just what is or is not a core proceeding:

> [A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.
>
> \*    \*    \*    \*    \*    \*
>
> If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). *See Barnett v. Stern*, 909 F.2d 973 (7th Cir.1990).

**2.** The court does not consider whether the bankruptcy courts have *criminal* contempt power. Civil contempt orders serve to compel or coerce obedience to a court order and/or to compen-

sate parties for losses incurred because of disobedience to an order. Criminal contempt orders are solely to punish the contemnor. The characterization of the contempt order may make a great difference in the decision whether an Article I court has the power to enter it. There is no dispute that it is the power to issue a *civil* contempt order which is in issue here.

**3.** A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

**4.** It is not unusual to find that Congress has made such a grant. It also has granted some

The majority of courts considering the question have reached a similar conclusion to the one this court reaches today but a few have held that the statute does not bestow contempt power upon the bankruptcy courts. A discussion of both conflicting and concurring cases may prove useful.

The Ninth Circuit held that bankruptcy courts do not have authority to enter contempt citations, *In re Sequoia Auto Brokers Ltd.*, 827 F.2d 1281 (9th Cir.1987). The court held that the language of § 105 is ambiguous. It therefore examined the limited legislative history available, and decided that Congress could not have intended to grant contempt power to the bankruptcy courts.

The Tenth Circuit found, as does this court, that the language of § 105 is unambiguous. *In re Skinner*, 917 F.2d 444 (10th Cir.1990), Because that court found the statutory language to be clear, it went on to consider whether it was constitutionally permissible for a bankruptcy court to exercise civil contempt power, and decided that it is. The Tenth Circuit's decision was in accord with an earlier, Fourth Circuit opinion which, using much the same reasoning, reached an identical result. See *In re Walters*, 868 F.2d 665 (4th Cir.1989). For a listing of the various other district court and bankruptcy court decisions which have held that bankruptcy courts have civil contempt powers, see *Skinner*.

### 2. Constitutional Authority

The fact that the bankruptcy courts have statutory authority to exercise civil contempt power is, of course, meaningless if the actual exercise of that power violates the constitution. The courts which have considered the question have unanimously held that the exercise of civil contempt

power by the bankruptcy courts is constitutional, and this court agrees.

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that Congress' general jurisdictional grant of power to the bankruptcy courts in the 1978 Bankruptcy Act, Pub.L. 95–598, 92 Stat. 2549 (codified as amended at 11 U.S.C. and various sections of 28 U.S.C.), was unconstitutional.[5] In *Marathon*, a debtor seeking reorganization under Chapter 11 sued a creditor for, among other things, breach of contract. The 1978 Act required the parties to litigate the action before the bankruptcy court, although it was essentially a state-law claim. The Court held that Article I courts may be granted the statutory right to decide matters involving "public rights", but that the constitution does not permit such courts to decide matters involving "private rights". The Court did not "definitively" explain the difference between public and private rights, but it did hold that "public rights must at a minimum arise 'between the government and others.'" *Id.* 458 U.S. at 69, 102 S.Ct. at 2870, citing *Ex parte Bakelite Corp.*, 279 U.S. 438, 451, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929). Private rights, on the other hand, involve "'the liability of one individual to another under the law as defined,'". *Id.* 458 U.S. at 69–70, 102 S.Ct. at 2870–71, citing *Crowell v. Benson*, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932).

The Court went on to hold that "when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized

---

degree of contempt power to various other Article I courts, including military courts (see 10 U.S.C. § 848), tax courts (26 U.S.C. § 7456) and territorial courts (Guam Civ.Pro.Code §§ 1209–22). Nonetheless, this court is aware that, more often than not, Congress requires Article I courts to certify the facts supporting a finding of contempt to a district court, which may then issue an appropriate order. See for example 2 U.S.C. § 437d (failure to comply with Federal Election Commission order), 15 U.S.C. § 49

(failure to comply with Federal Trade Commission order), 15 U.S.C. § 687b (failure to comply with Small Business Administration order), 29 U.S.C. § 161 (failure to comply with subpoena issued under LMRA), 35 U.S.C. § 24 (contempt before Patent and Trademark office).

**5.** The circumstances preceding and following the Supreme Court's ruling are thoroughly discussed in *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1237–1238 (7th Cir.1990).

**330**

tribunals created to perform the specialized adjudicative tasks related to that right." *Id.* at 83, 52 S.Ct. at 2878. Congress has created a system of debtors' and creditors' rights. A debtor's right to discharge is created by federal statute. It is not a private, or state-created right like that in issue in *Marathon.* No one would (or at least no one has, so far as this court could discover) argue that bankruptcy courts are constitutionally prohibited from deciding when and how to discharge a debtor. That being so, this court can discover no constitutional reason to prevent the bankruptcy court from deciding whether a party is in contempt of that order.

### 3. *Conclusion*

Because the alleged contempt arose from a core proceeding, and because the bankruptcy courts are statutorily authorized to enforce their orders, this court denies the motion to withdraw and remands the case to the bankruptcy court for determination.