**In re Wayne THOMAS and Deborah R. Thomas, Debtors.**

**Wayne THOMAS and Deborah R. Thomas, Plaintiffs,**

**v.**

**RESOLUTION TRUST CORPORATION as Receiver for Southeastern Federal Savings Bank, and Elizabeth B. Ells, Substitute Trustee, Defendants.**

**Bankruptcy No. 90–11015C–11W. Adv. No. 93–6009.**

United States Bankruptcy Court, M.D. North Carolina, Winston–Salem Division.

Feb. 24, 1995.

Robert E. Price, Jr., Winston–Salem, NC, for Deborah R. Thomas and Wayne Thomas.

Thomas B. Henson, Charlotte, NC, for Elizabeth B. Ells and Resolution Trust Corp.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This adversary proceeding involves a claim by the plaintiffs that the defendants attempted to recover debts in violation of the plaintiffs' confirmed plan of reorganization and the order of this court enjoining creditors from taking action on all claims except those arising out of the confirmed plan. The plaintiffs contend that the actions of the defendants included the filing of an improper foreclosure proceeding. Plaintiff sued for injunctive relief, compensatory damages and attorney's fees. The defendants do not contest that they were bound by the plan and prohibited from initiating the foreclosure. However, the defendants deny that the plaintiffs are entitled to recover damages or attorney's fees in this case.

## STATEMENT OF FACTS

Wayne Thomas and Deborah R. Thomas (hereinafter referred to as "debtors") filed for relief under Chapter 11 in 1990. Southeastern Federal Savings Bank ("Southeastern") was a creditor in the case by virtue of promissory notes secured by first and second lien deeds of trust on debtors' rental property located at 921 Thurmond Street, Winston–Salem, North Carolina. The debtors listed Southeastern on their schedules and made adequate protection payments throughout the Chapter 11 case. The defendant, Resolution Trust Corporation (hereinafter referred to as the "RTC"), succeeded to the interest of Southeastern during the pendency of the case and prior to the plaintiffs' submitting their proposed plan of reorganization.

On October 10, 1991, an order was entered confirming the debtors' plan of reorganization. Neither Southeastern nor the RTC voted against the plan of reorganization and neither appealed from the confirmation order. The plan restructured the obligations of the debtors under the two promissory notes held by the RTC as successor to Southeastern. Under the plan, the claims of Southeastern and the RTC were bifurcated into a secured claim of $42,000 at a fixed interest rate of 11.5%, secured by the real property located at 921 Thurmond Street, with the remaining amount treated as a general unsecured claim, and all defaults deemed cured. Article VII of the plan as confirmed by the court permanently stayed and enjoined any action against the debtors or property of the debtors except pursuant to the new terms established by the confirmed plan. In addition, a final decree was entered by the bankruptcy court on May 20, 1992, enjoining creditors from taking action on claims against the debtors except with respect to rights or interests arising out of the plan of reorganization.

Following confirmation, the debtors made timely payments on the secured debt held by the RTC in the amounts established by the plan. In January of 1993, Wendover Funding, Inc. ("Wendover") began servicing this debt as agent for the RTC. Even though the debtors were current under the confirmed plan, Wendover immediately began returning the debtors' checks and demanding payment of $8,913.38, the amount of the default under the original terms of the notes which had been cured and modified by the confirmed plan. The debtors notified Wendover of their restructured obligations under the confirmed plan of reorganization. When Wendover continued to demand the amount of the default under the original terms of the notes, the debtors employed counsel. In May of 1993, counsel for the debtors fully apprised counsel for Wendover of the confirmed Chapter 11 plan and obtained an assurance that Wendover and the RTC would abide by the provisions of the confirmed plan. At that time, Wendover agreed that the debtors were current and pledged to begin accepting their monthly payments. Inexplicably, on August 3, 1993, Wendover sent a letter to the debtors in which it claimed that the debtors were in default for eighteen payments or $7,987.99. When the debtors tendered their payments in accordance with the plan in August, September, October and November, 1993, they were returned by Wendover. The Debtors called Wendover several times in an effort to resolve the matter but their efforts were ignored by Wendover. Then, in early November, the RTC filed a foreclosure action in the Superior Court of Forsyth County. The RTC then posted a Notice of Hearing on Foreclosure of Deed of Trust on the door of the rental property at 921 Thurmond Street, establishing a foreclosure hearing date for December 7, 1993.

At the time of the commencement of foreclosure proceedings, the property at 921 Thurmond Street was fully rented. Within four or five days, three of the six tenants moved out. The debtors again employed counsel as a result of the action of Wendover and the RTC. Counsel for the plaintiffs then filed this action to enjoin the foreclosure and to recover damages and attorneys' fees. After this action was filed, the foreclosure proceeding was halted voluntarily by the RTC.

In the meantime, the debtors proceeded with efforts to rent the rooms that had been vacated following the posting of the foreclosure notice. The debtors cleaned and painted the three rooms to prepare them for new tenants, incurring ten hours of labor

costs at the rate of $12.50 per hour. This was done shortly after the tenants moved out. The debtors also began advertising for tenants at a cost of $93 per month for four months. Despite these efforts, the debtors were unable to fill the vacancies until April, 1994. During this period, the debtors lost monthly rent of $288.00 on one unit for four months and approximately sixteen weeks rent at $70/week per unit on the two units that were rented weekly.

The debtors initially sought an injunction prohibiting the defendants from pursuing the foreclosure action which was filed in state court. However, the court does not need to address this issue because the RTC stipulated in open court that the pending foreclosure proceeding would not be pursued. Remaining for resolution is the debtors' claim for actual damages and attorney's fees.

## DISCUSSION

■■■ This court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(O). This case involves a knowing, flagrant disregard for the binding plan of reorganization and the permanent injunction, both of which prohibit efforts to recover discharged debts.[1] When Wendover, the agent of the RTC, first sought to recover the discharged debts, the debtors, personally and through counsel, reminded Wendover that their rights had been modified by the confirmed plan and that they were enjoined from attempting to recover under the original terms of the notes. Wendover responded through counsel that they would not take any legal action and would accept the debtors' monthly payments in the amount established by the plan. However, within three months, Wendover again disregarded the Chapter 11 relief obtained by the debtors and this time caused a foreclosure proceeding to be filed by the RTC against the debtors.

■■■ The confirmation order and discharge injunction are critical elements of the fresh start that is afforded to debtors in the Bankruptcy Code. It is essential that creditors respect these court orders and permit debtors to benefit from the rights and protections to which they are entitled. Unlike section 362(h), which provides a specific statutory basis for an award of actual damages and attorneys' fees when a creditor violates the automatic stay, there is no remedial provision within the discharge provisions of sections 524 or 1141. Nevertheless, the court may take remedial measures to enforce these provisions and vindicate the rights of a discharged debtor in the event a creditor ignores these essential protections afforded to debtors. *See Matter of Miller*, 81 B.R. 669, 672 (Bankr.M.D.Fla.1988).

Bankruptcy courts have frequently sanctioned creditors for willfully violating the discharge injunction. In some cases, the court has simply found that the debtor is entitled to compensation. *In re Braun*, 141 B.R. 133 (Bankr.N.D.Ohio 1992) (awarding attorneys' fees, compensatory damages and punitive damages for willful violation of § 524). More frequently, courts have found the offending party in contempt. There are two separate grounds for such findings of contempt. Since § 524(a) is an injunction, some courts have applied the longstanding bankruptcy rule that willful violations of injunctions, such as the automatic stay,[2] give rise to contempt and sanctions. *See Behrens v. Woodhaven Ass'n*, 87 B.R. 971, 976 (Bankr.N.D.Ill.1988) (awarding actual damages and attorneys'

---

1. The effect of confirmation is governed by 11 U.S.C. § 1141. Section (a) binds the debtor and creditor to the terms of the confirmed plan. Section (d) discharges the reorganized debtor from any debt that arose before the order for relief unless the plan provides for that debt. Section 524(a) provides, in pertinent part, that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..."

2. Before section 362(h) was added to the Bankruptcy Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984, there was no express cause of action for violations of the automatic stay. Nevertheless, many courts awarded damages to compensate debtors for losses suffered as a result of the automatic stay. *See In re Computer Communications, Inc.*, 824 F.2d 725, 731 (9th Cir.1987) and citations therein.

fees). The more common approach, however, has been to find the party in contempt based on the bankruptcy court's authority under 11 U.S.C. § 105.[3] *In re Barbour,* 77 B.R. 530 (Bankr.E.D.N.C.1987) (contempt power authorizes awarding damages and attorneys' fees for willful violation of § 524); *In re Miller,* 81 B.R. 669 (Bankr.M.D.Fla. 1988) (attorney who willfully violated permanent injunction found in contempt and held liable for damages incurred by debtor); *In re Kimco Leasing, Inc.,* 144 B.R. 1001 (N.D.Ind.1992).

■ In order to be found in civil contempt, the offending party must have knowingly and willfully violated a definite and specific court order. *In re Ryan,* 100 B.R. 411, 417 (Bankr.N.D.Ill.1989). There is no question but that in this case the RTC willfully and knowingly violated the confirmation order, the discharge injunction, and the final decree and should be found in civil contempt.[4] The plaintiffs are entitled to recover from the RTC the actual damages and attorneys' fees resulting from the aforesaid willful conduct and resulting civil contempt of the RTC.

*I. Actual Damages*

■ Shortly after the RTC posted the notice of foreclosure hearing, the debtors lost half of their tenants. While there was no direct evidence from the tenants as to why they left, a reasonable inference to be drawn from all of the evidence is that the tenants left the premises as a result of the notice of foreclosure being posted at the property. There were no unusual problems in the neighborhood or at the debtor's property during the months preceding the flight of the tenants. The debtors presented evidence which established that the property at 921

Thurmond Street is a good rental property located in a family neighborhood, equipped with cable and air conditioning, that the tenants in the property were stable and that the property had a typical vacancy rate of only about 10 percent. The only unusual circumstance which occurred before the three tenants moved out was the posting of the foreclosure notice of sale on the front door of the property. The effect of this notice was to strongly suggest to the tenants that the debtors were not paying their debts and were about to loose the property. Faced with this disconcerting news, it is not surprising that the tenants decided to leave and find another place to live. It should be borne in mind, that this news did not arrive by word of mouth or rumor. Instead, it arrived in the form of an official court document being delivered and posted at the property by the Sheriff of Forsyth County. Considering these and the other circumstances which were shown at trial, the court finds that the three tenants who vacated the property did so as a proximate result of the RTC having instituting the foreclosure proceeding and that the monetary damages sustained by the debtors as a result of their tenants vacating the property were proximately caused by the RTC having instituted the foreclosure proceeding. The damages which were caused as a result of the acts of the RTC include the expenses of $125.00 which the debtors incurred in preparing the property for new tenants, advertising costs of $372.00 which the debtors incurred attempting to find new tenants. The damages sustained by the debtors also include the rents which the debtors lost when the monthly unit was vacant for four months before they could find a new tenant and the other units were vacant for sixteen weeks each before new tenants

---

3. 11 U.S.C. § 105 provides that "the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. There has been considerable debate about whether bankruptcy courts have contempt power under this section. However, the Fourth Circuit has held that § 105 authorizes the bankruptcy court to find a party in civil contempt. *In re Walters,* 868 F.2d 665 (4th Cir.1989).

4. The court recognizes that the complaint in this adversary proceeding did not specifically claim that the defendants should be held in contempt. It is clear, however, that the complaint stated the essential facts and the violations charged in a manner which provided notice and a fair hearing sufficient to meet the procedural requirements of Rule 9020. *See In re Maxair Aircraft Corp. of Georgia, Inc.,* 148 B.R. 353 (M.D.Ga.1992) (Failure to provide specific reference to criminal or civil contempt is not fatal to a plaintiff's pleading when the complaint provides notice sufficient for the defendant to formulate a defense.).

could be found. The court finds and concludes that the debtors made reasonable efforts to find new tenants and are entitled to recover the rents which were lost before they were able to do so. The lost rents which the debtors are entitled to recover consists of $288.00 per month for four months, representing the rents lost on one of the units, and $70.00 per week for thirty-two weeks, representing the rent lost on the second and third units, for total lost rents of $3,392.00.

## II. Attorney's Fees

■ The debtors were also required to employ an attorney to reopen the bankruptcy case and file this adversary proceeding to prevent a foreclosure sale of their property. In their complaint, the plaintiffs requested that the court "award appropriate sanctions against the defendants, including a reasonable attorney's fee." The RTC contends that, since it is a government entity, the doctrine of sovereign immunity precludes an award of attorney's fees in this case.

■ Section 106 of the United States Bankruptcy Code operates as a limited waiver of the doctrine of sovereign immunity as to a governmental unit with respect to 11 U.S.C. § 524 and 11 U.S.C. § 1141. 11 U.S.C. § 106(a)(1). This section was created by section 113 of the Bankruptcy Reform Act of 1994 and applies to actions that were pending at the time of the 1994 amendments.[5] Specifically, section 106 establishes that:

> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

■ Section 106 does not create a basis for the award of fees; it simply provides that sovereign immunity will not preclude the award of authorized fees under certain sections of the bankruptcy code, including sections 524 and 1141.[6]

As discussed above, bankruptcy courts have properly awarded attorney's fees against a party that violates the permanent discharge injunction upon a finding of contempt. *In re Barbour*, 77 B.R. 530 (Bankr. E.D.N.C.1987); *Kimco Leasing, Inc. v. Knee*, 144 B.R. 1001 (N.D.Ind.1992); *In re Schatz*, 122 B.R. 327, 328 (N.D.Ill.1990). As this court has found the defendants to be in contempt, the plaintiffs may recover their reasonable attorney's fees.

Because the complaint in this action did not specifically state that it was an action for contempt, the court will grant the RTC the opportunity to request a rehearing if it feels that adequate notice of the relief being sought was not provided. If such a request is filed within ten days of the date of this opinion, the court will schedule a rehearing on the issue of contempt. If the RTC does not request a rehearing within ten days, the plaintiffs may submit affidavits regarding attorney's fees within thirty days of the date of this opinion. The defendants shall have ten days after service of plaintiffs' affidavits within which to file a response regarding the affidavits and the fees requested by the plaintiffs. If the RTC does request a rehearing within ten days, the plaintiffs need not file affidavits regarding their attorney's fees until the further order of the court. Once the court has dealt with any motion for rehearing which is filed and the issue of attorney's fees, a final judgment will be entered by the court.

---

5. Section 702(b)(2)(B) of Pub.L. 103–394, October 22, 1994, 108 Stat. 4106, provided: "The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code before, on, and after the date of the enactment of this Act."

6. 11 U.S.C. § 106(a)(5) provides: "Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law."