**In re Thomas B. DENDY and Charita R. Dendy, Debtors.**

**C/A No. 00–05338–JW.**

United States Bankruptcy Court,
D. South Carolina.

May 5, 2008.

Robert H. Cooper, Greenville, SC, for Debtors.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

This matter comes before the Court on Thomas B. Dendy and Charita R. Dendy's ("Debtors") Motion for Sanctions ("Motion"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O). Pursuant to Fed.R.Civ.P. 52, made applicable to this proceeding pursuant to Fed. R. Bankr.P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1. Debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on June 19, 2000.

---

1. To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2. The records of the Greenville County Register of Deeds indicate that Cityscape Corp.

2. With their petition, Debtors filed schedules indicating that the value of their residence was $98,000.00. Debtors' schedules further indicate that Chevy Chase Bank held a first mortgage on their residence, with a principal balance of $105,200.00. Debtors' schedules also indicate that Litton Loan Servicing LP ("Litton") held or was the servicing agent for a second mortgage.

3. On July 5, 2000, Debtors filed a chapter 13 plan. The chapter 13 plan was based upon the form chapter 13 plan used at that time in this District and was not modified as provided in SC LBR 3015–1(a).

4. The plan contained a motion to value the claim held or serviced by Litton (the "Litton Claim") pursuant to SC LBR 3015–1. Since there was no equity in the property beyond the first mortgage, Debtors moved to value Litton's secured claim at $0.00 and to pay it as an unsecured creditor in paragraph 4(c) of the plan. Notice of the motion to value was conspicuously stated on the first page of the plan and provided that Litton had twenty-five days to respond to the valuation on behalf of itself or its principal.

5. Debtors' chapter 13 plan and related motions were served on Litton. Debtors' evidence indicates that, at the time of the petition, Litton was the holder or the servicing agent of the second mortgage and therefore was the proper party to receive service of the plan and motion.[2]

6. Neither Litton nor any other agent or purported holder of the second mort-

---

("Cityscape") recorded a second mortgage, in the amount of $45,000.00, against Debtors' residence. Cityscape later assigned its rights under the mortgage to First Bank National Association ("FBNA"). From the evidence presented—a letter from Aegis to Debtors in 2001 and Debtors' credit reports—it appears that Litton served as the servicing agent for

gage objected to confirmation nor did such parties file a proof of claim for the second mortgage.

7. Debtors' chapter 13 plan was confirmed on October 12, 2000.[3] The order confirming Debtor's chapter 13 plan provides "[p]ursuant to 11 U.S.C. § 506(a), the court hereby values those secured claims set forth in the confirmed plan at the amounts set forth in the confirmed plan or by separate order and voids those liens to the extent permitted by 11 U.S.C. § 506(d) and applicable law."

8. Litton was served with a copy of the confirmation order but did not appeal the order or seek reconsideration under Fed. R. Bankr.P. 9023 or 9024.

9. At some point following confirmation of the plan, Aegis Mortgage Corporation ("Aegis") assumed Litton's role as the servicer of the second mortgage. No appearance in the Bankruptcy Court was filed by Aegis or any other holder of the second mortgage at any time.

10. On May 30, 2001, Aegis sent Debtors a letter, which stated that Debtors had failed to make payments on the second mortgage since May 1, 2000 and were past due in the amount of $8,193.12. The letter directed Debtors to contact Lori Tinsley about the past due amount owed on the account.[4]

11. On June 11, 2001, Debtors' counsel advised Aegis by letter that the second mortgage was valued at $0.00 by motion in Debtors' confirmed chapter 13 plan and that Debtors were paying the second mort-gage through the plan. Counsel included a copy of Debtors' petition and plan with her letter to Aegis to demonstrate that Debtors were in bankruptcy and paying creditors pursuant to the terms of a plan.

12. Debtors completed the payments due under the confirmed plan and received a chapter 13 discharge on March 14, 2005.

13. The order discharging Debtors was served on Litton, as the party listed in the original schedules and statements.

14. Following discharge, Debtors attempted to refinance the first mortgage on their home. Debtors received a commitment from a lender on January 25, 2008 to refinance the debt on their first mortgage and on a vehicle at 5.75% per annum. The refinancing of these debts would have saved Debtors $498.00 per month. Debtors scheduled a closing on the loan for February 5, 2008.

15. Mrs. Dendy testified that she was advised on February 3, 2008 that the second mortgage still appeared as an encumbrance to her property. Mrs. Dendy further testified that she and her attorney contacted Aegis and Litton about removing the second mortgage from the county records. Litton advised Mrs. Dendy that it had sold or transferred its rights in the loan to Aegis in 2001 and instructed Debtors to contact Aegis about the loan. Debtors did not testify about the particular response they received from Aegis.

16. Through applying for a loan, Debtors also discovered that the debts with Litton and Aegis appeared on their credit

---

the holder of the mortgage and that Aegis later assumed that role. The Court finds that Litton was acting as the agent of the mortgagee at the time of the petition and plan.

**3.** Debtors amended their plan on September 5, 2000 to increase the term of the plan from 36 months to 56 months. The amended plan did not change the treatment of Litton's claim

or security interest and thus it was not necessary to re-serve Litton with the amended plan. *See In re Dangerfield*, C/A No. 04–13686–W, slip op. (Bankr.D.S.C. Aug. 23, 2005).

**4.** Aegis' letter may have been a violation of the automatic stay or the confirmation order; however, Debtors failed to plead that letter constituted such a violation.

reports. In both of their credit reports, Debtors' account with Litton has a balance of $0.00 and the information on this balance was last reported by Litton pre-petition in May of 2000. Both credit reports also indicate that the account with Aegis was opened in January of 1997, had a high balance of $45,000.00, and was past due in the amount of $30,759.00. Debtors' account with Aegis appears under the category of "Adverse Accounts" in Mr. Dendy's credit report. The reports further indicate that the account with Aegis was closed in December of 2001 and that the information was last reported on the account in November of 2004, prior to the discharge being entered in this case.

17. Debtors filed the Motion on February 27, 2008. Debtors alleged that Litton and Aegis violated the discharge injunction of 11 U.S.C. § 524 by failing to remove the second mortgage from the real property records of Greenville County, South Carolina. Although not pled, Debtors also argued at the hearing on the Motion that the notations on their credit reports were a slander of their credit. Debtors seek relief under this Court's statutory contempt powers of 11 U.S.C. § 105(a) to compel these creditors to remove the second mortgage and to pay Debtors actual and punitive damages for previously failing to remove the second mortgage and .for slander of credit.

18. Litton and Aegis were served with a copy of the Motion but failed to respond and failed to appear at the hearing on the Motion.

19. By separate order entered April 21, 2008, the Court found that the Greenville County clerk should record that the sec-ond mortgage has been voided by the confirmation order in this case. The Court reserved jurisdiction to consider Debtors' request for sanctions and other relief.

### ISSUE

Whether Litton or Aegis violated the discharge injunction or confirmation order by failing to release a voided mortgage or by failing to correct entries in Debtors' credit reports following discharge.

### CONCLUSIONS OF LAW

**I. Debtors Properly Voided the Second Mortgage.**

■ Subsequent to the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 331–32, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993), this Court and the majority of other courts have allowed debtors to void the mortgage of a creditor pursuant to 11 U.S.C. § 506(d)[5] if the creditor's claim was fully unsecured beyond the value of the senior liens. *See In re Meade*, C/A No. 95–73378–W, slip op. (Bankr.D.S.C. Oct. 3, 1995); *McDonald v. Master Financial, Inc. (In re McDonald)*, 205 F.3d 606 (3rd Cir.2000) (*cert. denied*, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000)), *see also* John B. Butler, III, *The Bankruptcy Handbook*, ¶ 12.40 at pp. 12–57—12–59 (2008) (collecting cases).

■ In this District, debtors in chapter 13 cases value the claims and void the liens of junior mortgage creditors, whose liens are unsecured beyond the value of senior liens, by a motion contained within the chapter 13 plan.[6] *See* SC LBR 3015–1(c).

---

5. Unless otherwise specified, citations to the Bankruptcy Code shall be to the version of the Code in effect at the time of the petition, which was prior to the amendments by the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA"). The amendments of BAPCPA would not alter the result of this Order.

6. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure specifically contem-

In this case, the chapter 13 plan specifically provided notice to Litton that Debtors were valuing the holder's claim pursuant to SC LBR 3015-1, which would thus void the lien pursuant to 11 U.S.C. § 506(d). *See In re Thomas*, 96–79381–W, slip op. at 4, 1997 WL 33343973 (Bankr.D.S.C. July 11, 1997) (discussing the due process provided to a creditor whose claim is valued by the form plan utilized in this District pursuant to SC LBR 3015-1). Though Litton may have subsequently transferred its rights under the mortgage, Debtors' evidence reflects that Litton was a proper party to receive notice of the valuation in as much as Litton was acting as a general agent for the holder of the mortgage by servicing the loan and collecting the loan payments. *See In re Woodberry*, 383 B.R. 373, 377–79 (Bankr.D.S.C.2008) (discussing the relationship between loan servicers and the holders of notes and mortgages and concluding that the loan servicer was a proper party in interest to act for the holder of the mortgage and move for relief from the automatic stay); *Dupuis v. Federal Home Loan Mortgage Corp.*, 879 F.Supp. 139, 143–44 (D.Me.1995) (discussing the agency relationship between a servicer and the holder of the mortgage and concluding that the servicer was a general agent for the holder of the mortgage).

Litton failed to object to the valuation of the second mortgage claim. As a result, whatever claim Litton had or represented was unsecured pursuant to 11 U.S.C. § 506(a) and its lien was thus void pursuant to 11 U.S.C. § 506(d).[7] The confirmation order specifically valued the second mortgage claim, pursuant to the provisions of the plan, and voided the lien represented by that mortgage. The confirmation order is binding on Litton, its principal, and any successors pursuant to 11 U.S.C. § 1327 and now defines the second mortgage creditor's rights and interest in Debtors' residence. *See In re Durham*, 260 B.R. 383, 386–87 (Bankr.D.S.C.2001) (discussing the binding effect of confirmation of a chapter 13 plan).

Since Debtors received a discharge in 2005, there appears to be no basis to reinstate the lien or otherwise nullify the voiding of the second mortgage lien[8] through the confirmation order. Therefore, by separate order, this Court has recognized that the second mortgage lien, which ap-

plate that the valuation of a security, and thus the resulting avoidance under 11 U.S.C. § 506(d), may be heard by motion as a contested matter in connection with the confirmation of a chapter 13 plan. *See* 11 U.S.C. § 506(a); Fed. R. Bankr.P. 3012 and 9014. For the valuation and avoidance to be effective through the confirmation process, due process requires that the creditor receive adequate notice that the Court will consider the valuation of its claim and avoidance of its lien at the confirmation hearing. *See Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993).

**7.** Although Litton chose not to file a proof of claim, the second mortgage lien may still be voided. *See In re Brown*, 73 B.R. 740, 744 (Bankr.W.D.Wis.1987); 4 *Collier on Bankruptcy* § 506.06[4][b][i], at pp. 506–156–506–157 (Lawrence P. King et al. eds., 15th ed.

Revised 2005) (collecting cases and supporting the majority approach); *see also Durham*, 260 B.R. at 389 (noting that a claim may be valued through the plan confirmation process regardless of whether the claim is filed prior to confirmation).

**8.** A lien may be subject to reinstatement, even if previously voided, if the case is dismissed or converted or if the confirmation order is vacated. *See* 11 U.S.C. §§ 349(b)(1)(C) and 1330; *McDonough v. Plaistow Cooperative Bank (In re McDonough)*, 166 B.R. 9, 14 (Bankr.D.Mass.1994) (finding lien stripping in a chapter 13 does not survive the conversion of the case to a case under chapter 7 since lien stripping would not otherwise be available to the debtor under *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)).

pears to encumber Debtors' residence according to Greenville County's records, is void and has directed that the Greenville County clerk record that the mortgage is void. *See In re Dendy,* C/A No. 00–05338–W, slip op. at 3 (Bankr.D.S.C. Apr. 21, 2008).

## II. Whether the Failure to Remove a Void Mortgage Lien Violates the Discharge Injunction

### A. The Scope of the Discharge Injunction.

 With some exceptions not applicable in this case, 11 U.S.C. § 524(a) operates as an injunction against any action to collect or recover a debt as a personal liability of the debtor. A discharge under 11 U.S.C. § 1328(a) extinguishes a debtor's personal obligation to pay the discharged debt. However, as explained by the Supreme Court, the underlying debt remains notwithstanding the discharge. *See Johnson v. Home State Bank,* 501 U.S. 78, 83–85, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In this sense, the "bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*—while leaving intact another-namely, an action against the debtor *in rem.*" *Id.* at 84, 111 S.Ct. 2150; *Ducker v. Standard Supply Co., Inc.,* 280 S.C. 157, 311 S.E.2d 728 (S.C.1984). Thus, if a creditor does not have an *in rem* interest in a debtor's property or if that interest was voided in bankruptcy, the creditor simply has a debt with no right to collect from the debtor or his property. *See Johnson,* 501 U.S. at 84, 111 S.Ct. 2150. This holding is confirmed by the Bankruptcy Code, which recognizes that a debt, although discharged, may still be repaid by a debtor. *See* 11 U.S.C. 524(f); *Bruno v. First USA Bank, (In re Bruno),* 356 B.R. 89, 92 (Bankr.W.D.N.Y.2006) (holding "decades of jurisprudence on the subject of bankruptcy discharge places it beyond cavil

that discharge does not extinguish the debt, but only the remedy, and that many debtors elect to voluntarily repay discharged debts for reasons unrelated to debt collection activity").

### B. The Authority of the Court to Enforce the Discharge Injunction and the Standard for Relief

 Since actions by a creditor to collect a discharged debt from the debtor are prohibited, the debtor may seek to enforce the discharge injunction under this Court's statutory contempt powers of 11 U.S.C. § 105(a). *See Workman v. GMAC Mortgage, LLC (In re Workman),* 392 B.R. 189 (Bankr.D.S.C.2007) (discussing the authority of the bankruptcy court to hold a creditor in contempt for violating the discharge injunction). Under this Court's statutory contempt powers, it may award an aggrieved debtor legal and equitable relief pursuant to 11 U.S.C. § 105(a) for violations of a confirmation order or discharge injunction. *See id.,* 392 B.R. at 197 (awarding damages and equitable relief for a creditor's violation of the discharge injunction). To hold a creditor in contempt, Debtors must demonstrate that the creditor willfully violated the discharge injunction, which is proved by showing that the creditors knew that the discharge injunction was invoked and intended the act which violated the injunction. *See id.,* 392 B.R. 189 at 194–95; *In re Almond,* 2007 WL 1345224, * 4–5 (Bankr.M.D.N.C. May 7, 2007) (collecting cases from bankruptcy courts within the Fourth Circuit and discussing standard to hold a party in civil contempt for violating the discharge injunction).

### C. The Mere Failure to Remove a Void Lien, Without Further Collection Efforts, Does Not Violate the Discharge Injunction.

 The crux of the Motion is whether the failure to release the second mortgage,

in and of itself, violates the discharge injunction, the plan, or the confirmation order in this case. With regard to the discharge injunction, Debtors have presented sufficient evidence that Litton and Aegis were aware or should have been aware of the injunction but insufficient evidence that they engaged in any action in violation of the injunction.

■ 11 U.S.C. § 524(a) prohibits "the commencement or continuation of an *action,* the *employment* of process, or an *act,* to collect, recover or offset any such debt as a personal liability of the debtor...." *See* 11 U.S.C. § 524(a)(2) (emphasis added). The operative words of this statute require some affirmative collection efforts on the part of the creditor in order for the discharge injunction to be violated. As one court has observed, "[t]he plain language of § 524(a) and the prohibitions therein do not encompass or otherwise proscribe passivity." *In re Mogg,* 2007 WL 2608501, *4 (Bankr.S.D.Ill.2007) (*citing McCready v. eBay, Inc.,* 453 F.3d 882, 888–89 (7th Cir.2006)). A bankruptcy court in New York has also held that "[m]ost importantly, it can readily be seen that neither 11 U.S.C. § 524 nor the discharge orders that are routinely entered by this Court *expressly* compel any affirmative action of any sort by any creditor whose debt has been discharged." *Bruno,* 356 B.R. at 92.

In this case, the legal state of the second mortgage is that it is void pursuant to 11 U.S.C. § 506(d) and the order confirming the plan. Nothing in Title 11, by itself, appears to require a creditor to take action to release, satisfy, or cancel a mortgage valued through a chapter 13 plan once the debtor receives a discharge. This Court has also not identified case law requiring such an action based solely on a discharge

order. While Debtors and the public can rely on the plan, order confirming the chapter 13 plan, and the discharge order for the position that the mortgage has been voided and is not enforceable against the former collateral or personally against Debtors, there appears to be no duty placed on the creditor to confirm this reality in the public records. Therefore, the Court cannot find that Aegis or Litton have taken an "action" in violation of the discharge injunction based solely on their failure to mark a mortgage as satisfied after the completion of Debtors' plan.

### III. Whether the Failure to Remove a Void Mortgage Lien Violates the Confirmation Order

#### A. The Authority of the Court to Enforce the Confirmation Order and the Standard for Relief

■ As the discharge injunction prohibits an act to collect a discharged debt from a debtor, the confirmation order prohibits any attempt to enforce a void mortgage lien against the creditor's former collateral. *See In re Jones,* 2007 WL 2480494, *2 (Bankr.E.D.La. Aug. 29, 2007) (holding "[a]n order of confirmation defines the rights of the debtor and interested parties to payment post-confirmation. The provisions of a confirmed plan bind the debtor and each creditor to its terms. The creditor is not entitled to collect or enforce its claims except as provided by the plan and the confirmation order"). A violation of the confirmation order is an act of contempt, which, like the discharge injunction, may be remedied by this Court's authority under 11 U.S.C. § 105(a).[9] *See In re Walters,* 868 F.2d 665, 668 (4th Cir. 1989) (discussing 11 U.S.C. § 105(a) as the appropriate authority to find a party in

---

**9.** This Court also has the inherent authority to enforce its own orders. *See Chambers v. NAS-*

*CO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

civil contempt for violating the orders of the bankruptcy court); *Dalkon Shield Claimants Trust v. Warren (In re A.H. Robins)*, 197 B.R. 561 (E.D.Va.1994) (finding a party in contempt for maintaining a civil action in violation of the confirmation order); *Jones*, 2007 WL 2480494, *7 (sanctioning a creditor for violating the confirmation order pursuant to 11 U.S.C. § 105).

 The Fourth Circuit has set forth the standard to determine if a party is in contempt for violating a court order. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir.2000). To establish civil contempt of an order, Debtors must prove each of the following by clear and convincing evidence: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor;' (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) . . . that [the] movant suffered harm as a result." *Id.* (*quoting Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F.Supp. 1397, 1405–06 (E.D.Va.1992), *aff'd*, 38 F.3d 133, 136 (4th Cir.1994)). With regard to the third element, the party must violate an "unequivocal demand" set forth in "specific detail" within the order at issue *See In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (*quoting Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986)); *see also Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir.1991) ("[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous."); *In re Thomas*, 184 B.R. 237, 241 (Bankr. M.D.N.C.1995) (finding a party may be held in civil contempt for violating the confirmation order if the party violated a "definite and specific" order).

**B. The Mere Failure to Remove a Void Lien, Without Further Collection Efforts, Does Not Violate the Confirmation Order.**

 Debtors have sufficiently proved the first, second, and fourth elements of civil contempt but have failed to meet their burden of proof on the third element. An examination of the relevant provisions in the plan and confirmation order in this case [10] is necessary to determine whether Litton and Aegis were specifically obligated to satisfy the mortgage.

**1. Relevant Provisions of the Plan Do Not Impose a Duty on a Creditor to Act**

**a.** "Payments of $00.00 or more per month to Litton Loan Servicing LP until . . . the value of the claim . . . has been paid in full. If the claim is to be valued, the debtor hereby moves to value the claim at $0 in accordance with SC LBR 3015–1 and the notice attached hereto."

**b.** "Upon confirmation of the plan, property of the estate will remain property of the estate, but title to the property shall revest in the debtor."

**c.** "Unless the plan provides otherwise, secured creditors shall retain the liens until the allowed amounts of their secured claims are paid."

**d.** "The terms of the debtor's prepetition agreement with a se-

---

**10.** The form chapter 13 plan language used currently in this District and the plan language in the case of *In re Myers*, C/A No. 03–02148–W, slip op. (Bankr.D.S.C. Jan. 31, 2008) are different from the plan language in this case. The current plan language states that "[c]ompletion of all plan payments shall impose an affirmative duty on secured creditors paid under the plan to satisfy liens as required by applicable law."

cured creditor shall continue to apply except as otherwise provided for in this plan or the order confirming plan."

The language of the plan specifically provided for treatment of Litton's claim different than that contained in the parties' pre-petition agreement. Debtors exercised their right under federal law to value Litton's claim and void the mortgage lien. Notwithstanding the foregoing, the plan language in this case does not expressly require the affected creditor to take any action following the completion of the chapter 13 case to remove the void mortgage from the real property records. Without a specific command in the plan for Litton, Aegis, or the holder to remove the mortgage lien from the county's records, the Court cannot find that these parties have committed an act of contempt. *See General Motors*, 61 F.3d at 258.

2. **Relevant Provisions of the Confirmation Order Do Not Impose a Duty on a Creditor to Act**

 a. **"IT IS ORDERED THAT: 1. The plan be, and hereby is, confirmed."**

 b. **"Pursuant to 11 U.S.C. § 506(a), the court hereby values those secured claims set forth in the confirmed plan at the amounts set forth in the confirmed plan or by separate order and voids those liens to the extent permitted by 11 U.S.C. § 506(d) and applicable law."**

 c. **"Secured creditors retain their lien to the extent that it is not avoided [or] modified by specific court order or by this order."**

While the order confirms the approved language of the plan, it does not impose a specific duty on the creditors to satisfy or cancel the mortgage. Since there is no specific or unequivocal command in the confirmation order to remove the lien, the Court cannot find that it supports this Motion. *See id.*

IV. **Relevant Provisions of the Bankruptcy Code Do Not Otherwise Impose a Duty on a Creditor to Cancel a Lien Voided by a Confirmation Order.**

Finally, there appears to be no specific requirement in the Bankruptcy Code to compel Litton or Aegis to remove the mortgage lien. Nothing in 11 U.S.C. §§ 506(d) or 1327 would appear to prohibit a creditor's passive failure to act once a voided lien is not subject to reinstatement by sections 348, 349, or 1330. Therefore, the Court is unwilling to find these creditors in contempt of the confirmation order or in violation of any other statutory obligation based purely on a failure to remove the lien from the state court's records without further evidence of an attempt by the creditors to enforce the void lien.[11]

V. **Debtors Have Failed to Demonstrate Contempt Based Upon the Reporting of the Debt in Their Credit Reports.**

At the hearing on the Motion, Debtors also sought damages for Aegis and Litton reporting the debt on their credit reports as a slander of their credit. This request for relief must be denied. First, the alleged failure by Aegis and Litton to remove adverse credit entries on their credit reports was not asserted in

---

11. The Court notes that South Carolina law may provide additional methods to require creditors to affirmatively act to release a mortgage even if such a requirement is otherwise set forth in the bankruptcy plan or confirmation order. *See* S.C.Code Ann. §§ 29–3–310 and 29–3–360.

Debtors' Motion. Procedural due process requires that the party alleged to be in contempt receive adequate notice of the acts constituting the contempt. *See In re Computer Dynamics, Inc.,* 253 B.R. 693, 699 (E.D.Va.2000) (*aff'd* 10 Fed.Appx. 141, 2001 WL 538945 (4th Cir.2001)). Since Debtors' Motion does not mention the adverse entries on their credit reports as grounds to hold Litton and Aegis in contempt, they may not use these entries as a basis for contempt.

■ Second, Debtors' evidence indicates that Aegis and Litton reported the information to the credit agencies prior to the discharge injunction. With respect to Litton, the credit reports indicate that Litton reported the debt prior to Debtors filing this bankruptcy case and now show a balance of $0.00, without other adverse comments. This evidence is insufficient to hold Litton in contempt of the discharge injunction or confirmation order. *See Smith v. Qualified Emergency Specialists, Inc., (In re Smith),* C/A No. 02–16796, slip op., 2007 Bankr.LEXIS 1038 at *7 (Bankr. S.D. Ohio April 3, 2007) ("[B]ecause the debt was reported on Plaintiffs credit history well before the bankruptcy petition was even filed, Plaintiffs allegation that this constituted an improper collection activity attenuates. Accordingly, no violation of the discharge injunction occurred in this case.").

While the report by Aegis was adverse to Debtors ability to incur new debt, it was last reported before the discharge injunction arose and was not combined with other post-discharge injunction collection efforts, such as a refusal to correct the credit report. *See In re Torres,* 367 B.R. 478, 486–87 (Bankr.S.D.N.Y.2007) (finding a creditor may not refuse to update a credit report for the purpose of coercing payment of a discharged debt); *Workman,* 392 B.R. at 195–96 (ordering equitable re-

lief for a violation of the discharge injunction where a creditor made adverse entries on a debtor's credit report that were inconsistent with the discharge injunction and orders of this Court and refused further mortgage payments from debtor following discharge). The mere existence of a discharged debt on a debtor's credit report, when reported prior to the discharge injunction and not combined with evidence of actions by a creditor to collect the debt after the injunction arose, does not rise to the level of an action that violates the discharge injunction. As the *Johnson* case held, the debt still exists after discharge but the creditor is without a means to enforce it. *See Johnson,* 501 U.S. at 83–84, 111 S.Ct. 2150. Relying on this precedent and under similar facts, the bankruptcy court in the Northern District of Ohio has found that the mere reporting of a debt prior to discharge, without further action to collect the debt after discharge, does not violate the discharge injunction. *See Irby v. Fashion Bug (In re Irby),* 337 B.R. 293, 295–297 (Bankr. N.D.Ohio 2005). This viewpoint appears to represent the majority position where there is no other evidence of action or intent by the creditor to collect the debt. *See Vogt v. Dynamic Recovery Services (In re Vogt),* 257 B.R. 65, 70–72 (Bankr. D.Colo.2000) (finding no violation of the discharge injunction by reporting a debt that had been discharged where the creditor made no effort to collect the debt); *In re Mahoney,* 368 B.R. 579, 589 (Bankr. W.D.Tex.2007) (same); *Mogg,* 2007 WL 2608501 (same); *Bruno,* 356 B.R. at 92 (same); *see also In re Goodfellow,* 298 B.R. 358 (Bankr.N.D.Iowa 2003) (finding a violation of the discharge injunction based upon adverse entries on debtor's credit report when combined with threatening letters and telephone calls from the creditor). In this case, there is simply no evidence that Aegis reported information to

the credit agencies after discharge with the intent to collect the debt or that they failed to correct the entries in an attempt to collect the debt.[12]

## VI. The Failure to Satisfy a Void Lien or to Correct a Credit Report, With An Intent to Collect, May Indicate a Violation of the Discharge Injunction or the Confirmation Order

■■■ This Court does not hold that the failure to release a void lien or the failure to correct a credit report would, in all instances, not be a violation of the discharge injunction or the confirmation order. This Court and others have sanctioned creditors for not releasing a lien paid through a plan, where there was evidence that the creditor failed to release the lien, in light of an unambiguous order ordering the release of the lien, and evidence of the creditor's intent to enforce the lien and collect the debt. *See In re Myers*, C/A No. 03–02148–W, slip op. (Bankr.D.S.C. Jan. 31, 2008) (sanctioning a creditor for violating the discharge injunction when it failed to release a voided mortgage lien, as required by the plan and a rule to show cause, and simultaneously threatened debtors with suit and foreclosure); *In re James*, 285 B.R. 114 (Bankr. W.D.N.Y.2002) (sanctioning a creditor for violating the discharge injunction when it failed to release a lien after notice from

debtors and seized the vehicle even though its lien was avoided in the bankruptcy). It may also appear impermissible for a creditor to report, following discharge, that a discharged debt is due or fail to correct a credit report after being asked to do so. *See Daniel v. Mitsubishi Motor Credit of Am., Inc., (In re Daniel)*, C/A No. 06–1139, 2006 WL 2662852 at *2, 2006 Bankr.LEXIS 2376 at *4 (Bankr.E.D.Va. Sept. 14, 2006) ("One may fairly debate whether [post-petition] reporting of a discharged debt as 'charged off' constitutes a violation of the discharge injunction."); *Mayer v. Huntington Nat'l Bank (In re Mayer)*, 254 B.R. 396 (Bankr.S.D.Ohio 2000) (awarding damages to the debtor based on the creditor's failure to timely update account information post-discharge after being asked to do so); *Torres*, 367 B.R. at 489–90 (denying a motion to dismiss a discharge injunction action where the creditor refused to correct a credit report that inaccurately reflected a discharged debt as due). However, in this case, there is not sufficient evidence that Litton or Aegis engaged in any action that would violate the confirmation order or discharge injunction.

## CONCLUSION

The Motion for sanctions is denied because there is insufficient evidence that Litton or Aegis acted or intended to collect a discharged debt, to enforce a void lien, to

---

12. To the extent Debtors' credit reports are inaccurate, as a result of the discharge order or otherwise, Congress has provided a statutory framework through which Debtors may dispute inaccurate information. *See* 15 U.S.C. § 1681 *et seq.* Several courts have recognized that debtors may avail themselves of the Fair Credit Reporting Act to remove discharged debt. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D.Cal.2007); *DiPrinzio v. MBNA America Bank, N.A.*, 2005 WL 2039175, at *4 (E.D.Pa. Aug. 24, 2005) (representation of discharged debt as due and

owing is "actionable [under the FCRA] because it is misleading or materially incomplete"); *Norman v. Applied Card Sys., Inc. (In re Norman)*, 2006 WL 2818814 (Bankr. N.D.Ala. Sept. 29, 2006) (citing to the Fair Credit Reporting Act and holding "[i]f a credit report indicates that a debt is past due without also disclosing that the debt has been discharged, and therefore not legally enforceable, it would appear that the debtor could correct his credit report so that his bankruptcy discharge is also disclosed").

report a discharged debt as due following discharge, or refused to correct a credit report. By separate order, the Court has provided Debtors with an order to have the second mortgage cancelled in the real property records of Greenville County, South Carolina.

**AND IT IS SO ORDERED.**